## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ZLOOP, INC., *et al.*, [1]<br><br>Debtors. | Chapter 11<br><br>Case No.  15-11660 (KJC)<br><br>(Jointly Administered) |
| ZLOOP, INC., by and through PATRICK TRAE' O'PRY, PLAN ADMINISTRATOR, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>KYLE BUSCH MOTORSPORTS, INC., JUSTIN BOSTON, an individual, JUSTIN BOSTON RACING, LLC, and ROBERT M. BOSTON, an individual,<br><br>Defendants. | Adv. Proc. No. _____ |

### COMPLAINT TO AVOID TRANSFERS AND OBLIGATIONS UNDER 11 U.S.C. §§ 544 and 548, RECOVER PROPERTY UNDER 11 U.S.C. § 550, OBJECT TO CLAIM AND FOR OTHER RELIEF

ZLOOP, Inc., by and through Patrick Trae' O'Pry, Plan Administrator (collectively, "Plaintiff"), for its *Complaint to Avoid Transfers and Obligations Under 11 U.S.C. §§ 544 and 548, Recover Property Under 11 U.S.C. § 550, Object to Claim and for Other Relief* ("Complaint") against each of Kyle Busch Motorsports, Inc., Justin Boston, Justin Boston Racing, LLC and Robert M. Boston, hereby alleges as follows:

---

[1]     The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are:  ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098).

## NATURE OF THE ACTION

1.      This adversary proceeding is brought by Plaintiff: (i) to avoid fraudulent transfers and obligations under sections 544 and 548 of title 11 of the United States Code ("Bankruptcy Code") and applicable state law; (ii) to recover fraudulent transfers under section 550 of the Bankruptcy Code; (iii) to disallow any claims against the Debtors filed or asserted by Kyle Busch Motorsports, Inc.; and (iv) for such other and related relief as is just and proper.

## JURISDICTION AND VENUE.

2.      The United States Bankruptcy Court for the District of Delaware ("Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference for the United States District of Delaware*, dated February 29, 2012.

3.      Pursuant to the Plan and Confirmation Order (defined below), the Court also has the jurisdiction to adjudicate the claims alleged herein. *See*, *e.g.*, Confirmation Order, ¶ 23; Plan, Art. XIV.

4.      The Court also has jurisdiction to adjudicate the claims alleged herein because defendant Kyle Busch Motorsports, Inc. filed a proof of claim in the Court.

5.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(A), (B), (C), (H) and (O).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

7.      Defendants are subject to service of process pursuant to Rule 7004(d) of the Federal Rules of Bankruptcy Procedure.

8.      This Court may enter a final order consistent with the statutes and orders identified above and Article III of the United States Constitution.

RLF1 16272573v.1

9.    In accordance with Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, Plaintiff hereby states that it consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PARTIES

10.    Plaintiff ZLOOP, Inc. ("ZLOOP") is a corporation organized under the laws of the state of Delaware.  As further described below, ZLOOP, Inc. is the surviving entity under and pursuant to the Plan and Confirmation Order entered by the Court in the above-captioned bankruptcy cases of ZLOOP, Inc., ZLOOP Nevada, LLC and ZLOOP Knitting Mill, LLC (collectively, "Debtors").  Mr. Patrick Trae' O'Pry is the Plan Administrator as provided under the Plan and Confirmation Order.  While operating, ZLOOP, Inc. maintained a principal place of business at 816 13th St. NE, Hickory, NC 28601.

11.    Defendant Kyle Busch Motorsports, Inc. ("Defendant") is a corporation organized under the laws of North Carolina with its principal place of business located in Iredell County, North Carolina.  Defendant's address is 351 Mazeppa Road, Mooresville, North Carolina 28115.

12.    Justin Boston Racing, LLC ("JBR LLC") is a limited liability company organized under the laws of Delaware.  JBR LLC has identified Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, DE 19958, as a registered agent.  Defendant Justin Boston was the President of JBR LLC at relevant times hereunder.

13.    Defendant Justin Boston ("JB") is an individual.  Upon information and belief, JB: (i) is not an infant, incompetent or serving in the military; (ii) is the President, managing

member of, interest holder in, person in control of or beneficiary of JBR LLC, or was such at relevant times hereunder; and (iii) has a mailing address of 119 Whaling Lane, Mooresville, NC.

14.     Defendant Robert M. Boston ("RB") is an individual. Upon information and belief, Robert Boston: (i) is not an infant, incompetent or serving in the military; (ii) is a managing member of, interest holder in, person in control of or beneficiary of JBR LLC, or was such at relevant times hereunder; and (iii) has a mailing address of P.O. Box 1497, Conover, NC, 28613.

## BACKGROUND

15.     On August 9, 2015 ("Petition Date"), each of the Debtors filed a voluntary petition with this Court under chapter 11 of the Bankruptcy Code.

16.     On September 2, 2016, the Debtors filed their *Debtors' Modified Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [D.I. 568] (as amended, "Plan").

17.     On October 25, 2016, the Court confirmed the Plan and entered its *Order Confirming and Approving on a Final Basis Debtors' Modified Combined Disclosure Statement and Joint Chapter 11 Plan of Liquidation* [D.I. 638] ("Confirmation Order").

18.     The Plan became effective on December 1, 2016 ("Effective Date").

19.     Pursuant to the Plan and Confirmation Order, the assets (including causes of action) of debtors ZLOOP Nevada, LLC and ZLOOP Knitting Mill, LLC were revested into ZLOOP on the Effective Date as the Post Effective Date Debtor under the Plan.

20.     Pursuant to the Plan and Confirmation Order, Plaintiff has all of the rights, powers and duties of the Debtors and the Debtors' estates, including but not limited to the right to pursue all of the claims alleged herein.

## FACTUAL BACKGROUND

21.     RB was one of the founders of ZLOOP.  RB also: (i) had an ownership interest in ZLOOP; (ii) served as an officer of ZLOOP; and (iii) served as a director of ZLOOP.  At all times relevant hereto, RB was an insider of the Debtors.

22.     JB is the son of RB and was an insider of the Debtors at all times relevant hereto.

23.     On August 28, 2014, an action was commenced against (among others) ZLOOP in the United States District Court for the Western District of Louisiana, Lafayette Division, styled as *Kendall Garrett Mosing & ZLOOP LA, LLC v. Robert "Bob" Boston* et al., No. 14–CV–02608 (PJH) (W.D. La. Aug. 28, 2014) ("Louisiana Action").  In the Louisiana Action, the plaintiffs thereunder alleged fraud and securities laws violations by one or more of the Debtors and their principals including RB, as well as other claims.

24.     Upon information and belief, the Louisiana Action was published on-line and also discussed on various NASCAR and racing related internet "blogs."

25.     Upon information and belief, the complaint in the Louisiana Action was sent to NASCAR and known to KBM prior to KBM's entry into the Driver Contract (defined below).

26.     On or about November 11, 2014, KBM, JB, JBR LLC and ZLOOP entered into a Driver Contract ("Driver Contract").

27.     JB executed the Driver Contract on behalf of himself and in his capacity as the President of JBR LLC.  RB executed the Driver Contract as a "Member/Manager" of ZLOOP.

28.     Under the Driver Contract, KBM agreed to provide JB with (among other things) a competitive vehicle, pit crew and other support necessary for JB to compete as a driver in certain NASCAR Camping World Truck Series races and use commercially reasonable efforts to ensure that JB's team qualified for and was competitive in such races.

5

29.     The initial term of the Driver Contract was two years.

30.     The Driver Contract provided that JB, JBR, LLC and ZLOOP were required to pay KBM $3.2 million per year ("Base Fee") and that each of JB, JBR LLC and ZLOOP was jointly and severally responsible for payment of such amounts to KBM.

31.     Under the Driver Contract, ZLOOP received the right to display certain trademarks on JB's race vehicle in consultation and agreement with KBM.  However, ZLOOP was not the true beneficiary of the Driver Contract.

32.     Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

33.     JB is RB's son.  RB was the Chairman and CEO of ZLOOP at the time of the execution of the Driver Contract.  RB's execution of the Driver Contract was intended to benefit JB, JBR LLC and/or RB.

34.     The payments to KBM under the Driver Contract were frontloaded, such that over $1.7 million of the annual $3.2 million Base Fee was due in the first four months of the year.

35.     ZLOOP made the following payments to KBM under the Driver Contract:

| Transfer Date | Transfer Type | Transfer Amount |
|---|---|---|
| January 15, 2015 | Wire Transfer | $500,000.00 |
| February 27, 2015 | Wire Transfer | $400,000.00 |
| March 11, 2015 | Wire Transfer | $400,000.00 |
| March 30, 2015 | ACH Debit | $326.60 |
| April 6, 2015 | Wire Transfer | $250,000.00 |
| | **TOTAL:** | **$1,550,326.60** |

36.     The Debtors did not receive commensurate value in exchange for such transfers.

37.     The cost of the Driver Contract to ZLOOP was excessive and the Driver Contract was not fair to ZLOOP.

38.     Upon information and belief, JB participated in less than 10 of the 23 races under the Driver Contract for 2015 and none of the anticipated 2016 races.

39.     Upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB.

40.     Upon information and belief, ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

41.     KBM knew that ZLOOP was in difficult financial circumstances prior to and after entering into the Driver Contract, and at the time of each payment received by it under the Driver Contract.

42.     ZLOOP's business had collapsed prior to entry into the Driver Contract and the first payment made by ZLOOP under the Driver Contract.  Among other things, ZLOOP: (i) reported a net operating loss of $6,694,070 in 2014; (ii) reported a net operating loss of $6,863,368 in 2015; (iii) had been sued by former investors and otherwise was engaged in lawsuits (including lawsuits filed by ZLOOP) that included allegations regarding the inoperability of the Debtors' major manufacturing equipment, fraud and the Debtors' negative financial condition and/or performance; (iv) had lost its significant customer(s).

43.     In or about May or June of 2015, JB and/or JBR LLC purported to terminate the Driver Contract.  In or about July, 2015, KBM purported to terminate the Driver Contract.

44.     Upon information and belief, KBM contracted with a substitute sponsor and/or driver immediately upon the termination of the Driver Contract.  KBM also has continued to run

7

the same number of vehicles in the World Truck Series races as it did prior to termination of the Driver Contract.

45.     On August 7, 2015, KBM filed a complaint ("KBM Litigation") against ZLOOP, JB and JBR LLC in the General Court of Justice, Superior Court Division, Iredell County, North Carolina, asserting damages in the approximate amount of $4 million arising out of an alleged breach of the Driver Contract.  KBM later dismissed ZLOOP from that case.

46.     On November 11, 2015, KBM filed a proof of claim (assigned claim number 16) in the Court and the Debtors' chapter 11 cases asserting an unsecured claim based on the Driver Contract in the amount of $4,025,061.20 (the "KBM Claim").

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Avoidance of Obligations Pursuant to 11 U.S.C. § 544,
### N.C. Gen. Stat. § 39-23.4(a)(1) and 6 Del. C. § 1304(a)(1)

47.     Plaintiff incorporates the allegations of paragraphs 1 through 46 above as if fully set forth herein.

48.     The KBM Contract was entered into on November 11, 2014.

49.     At that time and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31), N.C. Gen. Stat. § 39-23.1(7), 6 Del. C. § 1301(7) and/or other applicable law.

50.     As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

51.     Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

52.     Entry into the Driver Contract represented a material obligation incurred by ZLOOP.

53.     ZLOOP incurred the obligations under the Driver Contract with the actual intent to hinder or delay or defraud entities to which the Debtors were or became indebted.

54.     ZLOOP did not receive reasonably equivalent value in exchange for the incurrence of obligation under the Driver Contract and the incurrence of obligation under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

55.     The cost of the Driver Contract to ZLOOP was excessive.

56.     The Driver Contract was not fair to ZLOOP.

57.     Creditors existed before, after and at the time of the Debtors' entry into the Driver Contract, including creditors that remain creditors as of the Debtors' petition date.

58.     Pursuant to 11 U.S.C. § 544, the Debtors may avoid any obligation incurred by the Debtors that is voidable under state law.

59.     Therefore, under N.C. Gen. Stat. § 39-23.4(a)(1), 6 Del. C. § 1304(a)(1), or other applicable law, as made applicable by 11 U.S.C. § 544, the Debtors' obligations under the Driver Contract constitute avoidable actual fraudulent obligations.

### SECOND CAUSE OF ACTION
### Avoidance of Obligations
### Pursuant to 11 U.S.C. § 548(a)(1)(A)

60.     Plaintiff incorporates the allegations of paragraphs 1 through 59 above as if fully set forth herein.

61.     The KBM Contract was entered into on November 11, 2014.

9

62.     At that time and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31).

63.     As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

64.     Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

65.     Entry into the Driver Contract represented a material obligation incurred by ZLOOP.

66.     ZLOOP incurred the obligations under the Driver Contract with the actual intent to hinder or delay or defraud entities to which the Debtors were or became indebted.

67.     ZLOOP did not receive reasonably equivalent value in exchange for the incurrence of obligation under the Driver Contract and the incurrence of obligation under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

68.     The cost of the Driver Contract to ZLOOP was excessive.

69.     The Driver Contract was not fair to ZLOOP.

70.     Therefore, under 11 U.S.C. § 548(a)(1)(A), the Debtors' obligations under the Driver Contract constitute avoidable actual fraudulent obligations.

**THIRD CAUSE OF ACTION**
**Avoidance of Obligations Pursuant to 11 U.S.C. § 544,**
**N.C. Gen. Stat. § 39-23.4(a)(2) and 6 Del. C. § 1304(a)(2)**

71.     Plaintiff incorporates the allegations of paragraphs 1 through 70 above as if fully set forth herein.

72.     The KBM Contract was entered into on November 11, 2014.

73.     At that time and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31), N.C. Gen. Stat. § 39-23.1(7), 6 Del. C. § 1301(7) and/or other applicable law.

74.     As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

75.     Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

76.     Entry into the Driver Contract represented a material obligation incurred by ZLOOP.

77.     ZLOOP did not receive commensurate value in exchange for the incurrence of obligation under the Driver Contract and the incurrence of obligation under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

78.     The cost of the Driver Contract to ZLOOP was excessive.

79.     The Driver Contract was not fair to ZLOOP.

80.     For all of these reasons and those incorporated herein, ZLOOP did not receive reasonably equivalent value in exchange for the incurrence of obligation under the Driver Contract.

81.     The Debtors either: (i) were insolvent on the date that of the incurrence of obligation under the Driver Contract, or became insolvent as a result of the incurrence of obligation under the Driver Contract; (ii) were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with them represented unreasonably small capital; or (iii) intended to incur, or believed that they would incur, debts that would be beyond the Debtors ability to pay as such debts matured.

82.     Creditors existed before, after and at the time of the Debtors' entry into the Driver Contract, including creditors that remain creditors as of the Debtors' petition date

83.     Pursuant to 11 U.S.C. § 544, the Debtors may avoid any obligation incurred by the Debtors that is voidable under state law.

84.     Therefore, under N.C. Gen. Stat. § 39-23.4(a)(2), 6 Del. C. § 1304(a)(2), or other applicable law, as made applicable by 11 U.S.C. § 544, the Debtors' obligations under the Driver Contract constitute avoidable constructive fraudulent obligations.

## FOURTH CAUSE OF ACTION
### Avoidance of Obligations
### Pursuant to 11 U.S.C. § 548(a)(1)(B)

85.     Plaintiff incorporates the allegations of paragraphs 1 through 84 above as if fully set forth herein.

86.     The KBM Contract was entered into on November 11, 2014.

87.     At that time and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31).

88.     As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

89.     Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

90.     Entry into the Driver Contract represented a material obligation incurred by ZLOOP.

91.     ZLOOP did not receive commensurate value in exchange for the incurrence of obligation under the Driver Contract and the incurrence of obligation under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

92.     The cost of the Driver Contract to ZLOOP was excessive.

93.     The Driver Contract was not fair to ZLOOP.

94.     For all of these reasons and those incorporated herein, ZLOOP did not receive reasonably equivalent value in exchange for the incurrence of obligation under the Driver Contract.

95.     The Debtors either: (i) were insolvent on the date that of the incurrence of obligation under the Driver Contract, or became insolvent as a result of the incurrence of obligation under the Driver Contract; (ii) were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with them represented unreasonably small capital; or (iii) intended to incur, or believed that they would incur, debts that would be beyond the Debtors ability to pay as such debts matured.

96.    Therefore, under 11 U.S.C. § 548(a)(1)(B), the Debtors' obligations under the Driver Contract constitute avoidable constructive fraudulent obligations.

**FIFTH CAUSE OF ACTION**
**Avoidance of Transfers Pursuant to 11 U.S.C. § 544,**
**N.C. Gen. Stat. § 39-23.4(a)(1) and 6 Del. C. § 1304(a)(1)**

97.    Plaintiff incorporates the allegations of paragraphs 1 through 96 above as if fully set forth herein.

98.    The KBM Contract was entered into on November 11, 2014.

99.    As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

100.    Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

101.    During the two years prior to the Petition Date, KBM received transfers made by one or more of the Debtors totaling not less than $1,550,326.60 (collectively, "Transfers"), as outlined in the following chart:

| Transfer Date | Transfer Type | Transfer Amount |
|---|---|---|
| January 15, 2015 | Wire Transfer | $500,000.00 |
| February 27, 2015 | Wire Transfer | $400,000.00 |
| March 11, 2015 | Wire Transfer | $400,000.00 |
| March 30, 2015 | ACH Debit | $326.60 |
| April 6, 2015 | Wire Transfer | $250,000.00 |
| | **TOTAL:** | **$1,550,326.60** |

102.    On the date of each Transfer and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31), N.C. Gen. Stat. § 39-23.1(7), 6 Del. C. § 1301(7) and/or other applicable law.

103.    The Transfers constitute transfers of interests in the Debtors' property.

104.    The Transfers were made to or for KBM's benefit.

105.    The Debtors made the Transfers with the actual intent to hinder or delay or defraud entities to which the Debtors were or became indebted.

106.    ZLOOP did not receive commensurate value in exchange for the payment of the Transfers under the Driver Contract and the payment of the Transfers under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

107.    The cost of the Driver Contract to ZLOOP was excessive and the Driver Contract was not fair to ZLOOP.

108.    For all of these reasons and those incorporated herein, ZLOOP did not receive reasonably equivalent value in exchange for the Transfers made by the Debtors.

109.    Creditors existed before, after and at the time of the Transfers, including creditors that remain creditors as of the Debtors' petition date

110.    Pursuant to 11 U.S.C. § 544, the Debtors may avoid any transfer made by the Debtors that is voidable under state law.

111.    Therefore, under N.C. Gen. Stat. § 39-23.4(a)(1), 6 Del. C. § 1304(a)(1), or other applicable law, as made applicable by 11 U.S.C. § 544, the Transfers constitute avoidable actual fraudulent obligations.

## SIXTH CAUSE OF ACTION
### Avoidance of Transfers
### Pursuant to 11 U.S.C. § 548(a)(1)(A)

112.    Plaintiff incorporates the allegations of paragraphs 1 through 111 above as if fully set forth herein.

113.    The KBM Contract was entered into on November 11, 2014.

114.    As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

115.    Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

116.    During the two years prior to the Petition Date, one or more of the Debtors made, and KBM received, the Transfers.

117.    On the date of each Transfer and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31), N.C. Gen. Stat. § 39-23.1(7), 6 Del. C. § 1301(7) and/or other applicable law.

118.    The Transfers constitute transfers of interests in the Debtors' property.

119.    The Transfers were made to or for KBM's benefit.

120.    The Debtors made the Transfers with the actual intent to hinder or delay or defraud entities to which the Debtors were or became indebted.

121.    ZLOOP did not receive commensurate value in exchange for the payment of the Transfers under the Driver Contract and the payment of the Transfers under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

16

122.    The cost of the Driver Contract to ZLOOP was excessive and the Driver Contract was not fair to ZLOOP.

123.    For all of these reasons and those incorporated herein, ZLOOP did not receive reasonably equivalent value in exchange for the Transfers made by the Debtors.

124.    Therefore, pursuant to 11 U.S.C. § 548(a)(1)(A), the Transfers constitute avoidable actual fraudulent obligations.

**SEVENTH CAUSE OF ACTION**
**Avoidance of Transfers Pursuant to 11 U.S.C. § 544,**
**N.C. Gen. Stat. § 39-23.4(a)(2) and 6 Del. C. § 1304(a)(2)**

125.    Plaintiff incorporates the allegations of paragraphs 1 through 124 above as if fully set forth herein.

126.    The KBM Contract was entered into on November 11, 2014.

127.    At that time and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31), N.C. Gen. Stat. § 39-23.1(7), 6 Del. C. § 1301(7) and/or other applicable law.

128.    As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

129.    Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

130.    Entry into the Driver Contract represented a material obligation incurred by ZLOOP.

131.    During the two years prior to the Petition Date, one or more of the Debtors made, and KBM received, the Transfers.

132.    ZLOOP did not receive commensurate value in exchange for the payment of the Transfers under the Driver Contract and the payment of the Transfers under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

133.    The cost of the Driver Contract to ZLOOP was excessive and the Driver Contract was not fair to ZLOOP.

134.    For all of these reasons and those incorporated herein, ZLOOP did not receive reasonably equivalent value in exchange for the Transfers made by the Debtors.

135.    The Debtors either: (i) were insolvent on the date of the Transfers, or became insolvent as a result of the payment of the Transfers; (ii) were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with them represented unreasonably small capital; or (iii) intended to incur, or believed that they would incur, debts that would be beyond the Debtors ability to pay as such debts matured.

136.    Creditors existed before, after and at the time of each of the Transfers, including creditors that remain creditors as of the Debtors' petition date

137.    Pursuant to 11 U.S.C. § 544, the Debtors may avoid any transfer by the Debtors that is voidable under state law.

138.    Therefore, under N.C. Gen. Stat. § 39-23.4(a)(2), 6 Del. C. § 1304(a)(2), or other applicable law, as made applicable by 11 U.S.C. § 544, the Transfers constitute avoidable constructive fraudulent obligations.

## EIGHTH CAUSE OF ACTION
### Avoidance of Transfers
### Pursuant to 11 U.S.C. § 548(a)(1)(B)

139.     Plaintiff incorporates the allegations of paragraphs 1 through 138 above as if fully set forth herein.

140.     The KBM Contract was entered into on November 11, 2014.

141.     At that time and at all other times relevant hereto, each of JB, JBR LLC and RB was an insider of ZLOOP as provided under 11 U.S.C. § 101(31), N.C. Gen. Stat. § 39-23.1(7), 6 Del. C. § 1301(7) and/or other applicable law.

142.     As described above, ZLOOP was not the true beneficiary of the Driver Contract. Instead, JB, JBR LLC and/or RB were the true beneficiaries of the Driver Contract because the essential purpose of the Driver Contract was to guarantee JB a position as a KBM driver and/or otherwise to further JB's career as a racing driver.

143.     Moreover, upon information and belief, the sponsorship benefits, if any, under the Driver Contract were intended for the benefit of (and received by) JB, JBR LLC and/or RB, and ZLOOP displayed its own trademarks on the KBM/JB vehicle during only two or fewer races.

144.     Entry into the Driver Contract represented a material obligation incurred by ZLOOP.

145.     During the two years prior to the Petition Date, one or more of the Debtors made, and KBM received, the Transfers.

146.     ZLOOP did not receive commensurate value in exchange for the payment of the Transfers under the Driver Contract and the payment of the Transfers under the Driver Contract was to or for the benefit of JB, JBR LLC and/or RB.

147.    The cost of the Driver Contract to ZLOOP was excessive and the Driver Contract was not fair to ZLOOP.

148.    For all of these reasons and those incorporated herein, ZLOOP did not receive reasonably equivalent value in exchange for the Transfers made by the Debtors.

149.    The Debtors either: (i) were insolvent on the date of the Transfers, or became insolvent as a result of the payment of the Transfers; (ii) were engaged in business or transactions, or were about to engage in business or transactions, for which any property remaining with them represented unreasonably small capital; or (iii) intended to incur, or believed that they would incur, debts that would be beyond the Debtors ability to pay as such debts matured.

150.    Therefore, under 11 U.S.C. § 548(a)(1)(B), the Transfers constitute avoidable constructive fraudulent obligations.

**NINTH CAUSE OF ACTION**
**Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550**

151.    Plaintiff incorporates the allegations of paragraphs 1 through 150 above as if fully set forth herein.

152.    Plaintiffs are entitled to avoid the Transfers under 11 U.S.C. §§ 544 and 548.

153.    KBM was the initial transferee of the Transfers, or the immediate or mediate transferee of such initial transferee, or the person for whose benefit the Transfers were made.

154.    Each of JB, JBR LLC and/or RB was a person for whose benefit the Transfers were made.

155.    Therefore, Plaintiffs are entitled to recover the Transfers from each Defendant under 11 U.S.C. § 550(a), plus interest to the date of payment and the costs of this proceeding.

## TENTH CAUSE OF ACTION
### Claim Objection Pursuant to 11 U.S.C. § 502

156.    Plaintiff incorporates the allegations of paragraphs 1 through 155 above as if fully set forth herein.

157.    On November 11, 2015, KBM filed the KBM Claim asserting an unsecured claim in the amount of $4,025,061.20 against the Debtors' estates.

158.    Upon information and belief, KBM contracted with a substitute sponsor and/or driver immediately upon the termination of the Driver Contract.  KBM also has continued to run the same number of vehicles in the World Truck Series races as it did prior to termination of the Driver Contract.  Accordingly, KBM has not incurred non-mitigated damages under the Driver Contract.

159.    As described above, Plaintiff is entitled to avoid the Debtors' obligations under the Driver Contract as actual or constructive fraudulent obligations pursuant to sections 544, 548 and 550 of the Bankruptcy Code and applicable state law.

160.    The KBM Claim assumes that the Debtors' obligations under the Driver Contract are enforceable.

161.    As such obligations are avoidable, and for the other reasons described above and incorporated herein, Plaintiff is entitled to a judgment under section 502(b) of the Bankruptcy Code disallowing the KBM Claim in its entirety.

162.    As described above, Plaintiff is entitled to avoid and recover the Transfers pursuant to sections 544, 548 and 550 of the Bankruptcy Code and applicable state law.

163.    KBM has not paid the amount of the Transfers or otherwise turned over such property for which the KBM is liable under section 550 of the Bankruptcy Code.

RLF1 16272573v.1

164.    Plaintiff therefore is entitled to a judgment under section 502(d) of the Bankruptcy Code disallowing the KBM Claim until such time as KBM pays the Transfers (plus interest thereon and costs) to Plaintiff.

165.    Pursuant to section 502(j) of the Bankruptcy Code, any and all claims of KBM asserted against the Debtors' estates, including those previously allowed (if any), must be reconsidered and disallowed until such time as KBM pays the Transfers (plus interest thereon and costs) to Plaintiff.

## RESERVATION OF RIGHTS

166.    During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional Transfers made to KBM.  It is the Plaintiff's intention to avoid and recover all transfers made by one or more of the Debtors of an interest of one or more of the Debtors in property to or for the benefit of KBM.

167.    Plaintiff reserves the right to amend this complaint in order to include: (i) further information regarding the Transfers; (ii) additional Transfers, including, without limitation, additional obligations; (iii) modifications and/or revisions to any Defendant's name or other identifying facts; (iv) additional defendants; and/or (v) additional causes of action (including, but not limited to, claims arising under 11 U.S.C. §§ 542, 544, 545, 547, 548, 549, and 553) that may become known to Plaintiff at any time during this adversary proceeding (through formal discovery or otherwise) and for any such claims to relate back to this original Complaint.

168.    Plaintiff also reserves its right to bring other and additional claims as against any one or more of the Defendants under separate Complaint.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiffs request that this Court grant them the following relief against Defendant and that the Court enter a judgment against Defendant:

**A.**    That the Debtors' obligations under the Driver Contract be avoided and the Debtors released from all obligations arising thereunder, under N.C. Gen. Stat. § 39-23.4(a), 6 Del. C. § 1304(a), 11 U.S.C. § 544 and/or 11 U.S.C. § 548(a)(1);

B.    That the Transfers in the amount of not less than $1,550,326.60 be avoided under N.C. Gen. Stat. § 39-23.4(a), 6 Del. C. § 1304(a), 11 U.S.C. § 544 and/or 11 U.S.C. § 548(a)(1);

C.    That the Transfers in the amount of not less than $1,550,326.60 be recovered by Plaintiff pursuant to 11 U.S.C. § 550;

D.    Requiring Defendants to pay forthwith the judgment amount and making each of them jointly and severally liable for the amount due to Plaintiff and other damages or awards made to Plaintiff under the Complaint;

E.    Awarding pre-judgment interest at the maximum legal rate running from the date of the transfer of the Transfers to the date of the judgment herein;

F.    Awarding post judgment interest at the maximum legal rate running from the date of judgment herein until the date judgment is paid in full, plus costs;

G.    Disallowing KBM's Proof of Claim in its entirety;

H.    Awarding Plaintiff its costs, expenses and attorneys' fees incurred in connection with this proceeding; and

I.    Granting Plaintiff such other and further relief as the Court deems just and proper.

RLF1 16272573v.1

Dated: December 19, 2016
      Wilmington, Delaware

_____
Paul N. Heath (No. 3704)
Marcos A. Ramos (No. 4450)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square, 920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

James H. Gibson
Charles M. Kreamer, Sr.
ALLEN & GOOCH
2000 Kaliste Saloom Road, Suite 400
Lafayette, Louisiana 70508
Telephone:  (337) 291-1300
Facsimile:  (337) 291-1305

Attorneys for Plaintiff

RLF1 16272573v.1